IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RON P. HICKS, JR.                                                                                    PLAINTIFF

V.                                            NO. 14-5145

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Ron P. Hicks, Jr., brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff filed his applications for DIB and SSI on November 15, 2011, alleging an inability to work since November 26, 2010, due to "back injury." (Tr. 129-139, 159, 173). An administrative hearing was held on September 12, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 29-60).

By written decision dated December 13, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – disorder of the cervical spine and disorder of the left shoulder. (Tr. 17). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did

1

not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally reach overhead with his right upper extremity and the claimant can never reach overhead with his left upper extremity.

(Tr. 18). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as service manager and gate guard. (Tr. 23-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied that request on March 14, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's

2

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff's counsel has raised several issues in this appeal.  However, the Court will first note that Plaintiff's counsel has made inappropriate comments in her brief about the ALJ.  For example, on page 11 of her brief, Plaintiff's counsel states:

> This is where experience in an ALJ could perhaps be more helpful.  All judges have their own assets but a judge that comes from the criminal law background that is thrust into disability law would not be familiar with how a workers' compensation claim works in Arkansas after Act 796 of 1993.

On page 12 of her brief, Plaintiff's counsel states:

> The ALJ was an excellent, near-heroic prosecutor but the fact remains that he comes from a criminal law background and has never seen workers' compensation claimants until he took the social security bench.

Such commentary is unnecessary, inappropriate, and irrelevant, and counsel for Plaintiff is cautioned to avoid making such comments in future cases.

Turning to the merits of Plaintiff's arguments, one of the arguments relates to the ALJ's reliance upon the VE.  In his RFC, the ALJ included the limitation that Plaintiff can only occasionally reach overhead with his right upper extremity and can never reach overhead with his left upper extremity.  (Tr. 18).

At the hearing held before the ALJ, the VE was testifying by telephone, and a review of the transcript reveals that a good part of the VE's testimony was inaudible.  In this case, the VE's testimony relating to whether certain jobs required overhead reaching is critical,

4

especially when trying to determine whether there is a conflict between the VE testimony and the Dictionary of Occupational Titles (DOT). The ALJ posed the following hypothetical questions to the VE:

> Q: Okay. Let me ask you to consider someone of the claimant's same age, education, and work experience who can do light work, occasional overhead reaching with the right upper extremity, no overhead reaching with the left upper extremity. Could an individual with those limits perform any of the claimant's past work?
>
> A: I would think that the position as garage supervisor, tire service manager, and parts manager would [INAUDIBLE] acceptable.
>
> Q: Okay. Would that be as performed, as generally performed or as actually performed because I get the impression he was kind of a working manager?
>
> A: Yes, I am looking at that as basically as usually performed in accordance with the DOT.
>
> Q: Okay.
>
> A: Now, as you just stated [INAUDIBLE] outside of the usual performance [INAUDIBLE] limit the individual if he has to do any reaching above his head [ INAUDIBLE] work with that [INAUDIBLE].
>
> Q: Okay. Let me ask you to go ahead and see if there are any other jobs that you can identify.
>
> A: All right. [INAUDIBLE].
>
> Q: Take your time.
>
> A: Okay. I am looking at the position – just one moment. Looking at the position of service manager, that is DOT Number 185.167-058, exertional level is light, SVP of 6, looking at a national population of 418,530, statewide 4,590.
>
> Q: Okay. Let me make sure I heard that clearly. Service manager, 185.167-058, light, SVP 6, US economy 418,530, in Arkansas 4,590?

5

A: That is correct.

Q: Okay. Are there any other jobs you can identify?

A: Yes, I'm looking.

Q: Okay.

A: Okay. I'm looking at the position of the manager of a auto specialty service [INAUDIBLE], this is also – DOT Number 185.167-074, it is light in exertion, SVP of 7, the national employment is about 418,560, and the statewide [INAUDIBLE].

Q: Okay. Well, are they – but you're convinced they're part of a different DOT Code?

A: Yes, that's [INAUDIBLE], that's a different DOT code, the last two digits 74 compared to the previous one which was 58.

Q: Okay. Are of they [sic] of the same category of jobs though?

A: They are both manager type positions –

Q: Well, it –

A: --auto-related positions.

Q: Here's my question, Mr. Johnson, I'm concerned that those are the same jobs that you're referring, those 4,590 jobs that are in Arkansas. It's just unusual to have the exact same number of jobs for two different identified –

A: [INAUDIBLE] basically what [INAUDIBLE] the DOT the same that they are looking at manager type positions, and even though this has a different title it's still just classified as manager type position. That's as good as I can give you on that. You're looking at managers for those two positions.

Q: Okay……

. . .

A: I'm about to identify something different.

Q: Okay.

6

>A:  I found in that grouping.
>
>Q:  Let me ask you this, can you tell me on that manager – both of those jobs you listed, can you tell me what the overhead reaching for both of those jobs are listed in the DOT?
>
>A:  I will [INAUDIBLE].
>
>Q:  Okay.
>
>A:  [INAUDIBLE – it doesn't say [INAUDIBLE], it does say that there is [INAUDIBLE] doesn't [INAUDIBLE] be more specific as far as whether or not there's [INAUDIBLE].
>
>Q:  Okay. Well, based on your expertise, do you think these two jobs that you listed are going to meet the hypothetical that I gave with occasional overhead reaching with the right upper extremity and no overhead reaching with the left upper extremity?
>
>A: I would – I would think [INAUDIBLE] that there would be the overhead [INAUDIBLE] because [INAUDIBLE] overhead. [INAUDIBLE].
>
>Q: Okay. Okay.
>
>A:  I have found in other positions [INAUDIBLE] as the parts sales [INAUDIBLE], this DOT 279.357-02, and a SVP of 5, exertional is light, [INAUDIBLE] – and I apologize, "im looking at the [INAUDIBLE] that it could be in the [INAUDIBLE] the overhead [INAUDIBLE].
>
>   . . .
>
>A:  [INAUDIBLE] I can go to a position that is unrelated to his previous work. [INAUDIBLE]. Okay. I have [INAUDIBLE], as a light position, with a DOT number of 372. [INAUDIBLE] – 708 with a SVP of 3, [INAUDIBLE] semi-skilled and a national population of 1,000 – I'm sorry, [INAUDIBLE] 32, 940, with a statewide of 6,100.

(Tr. 52-57).

The job of service manager requires frequent reaching, and the job of gate guard requires occasional reaching. DOT 185.167-058 and DOT 372.667-030. Although the ALJ

7

asked for an explanation from the VE regarding whether the proposed jobs fit within his hypothetical questions, it is impossible for the Court to determine how the VE responded because of the large number of "inaudibles" contained in his responses. The Eighth Circuit has held that "[a]bsent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record."  Williams v. Barnhart, 289 F.3d 556, 557-558 (8th Cir. 2002).

In this case, the inaudible portions of the VE's testimony specifically relate to the critical issue of whether the job requirements fit within the ALJ's hypothetical question.  The Court cannot say that the omissions are "small gaps" in the transcript that "do not 'interfere with comprehension of the testimony to an extent that would hinder fair review.'" Id. at 558 (quoting from Ward v. Heckler, 786 F.2d 844, 848 (8th Cir. 1986)(per curiam)).

Accordingly, the case is remanded for further development of the evidence in the form of the VE clarifying whether the proposed jobs he identifies fit within the ALJ's hypothetical limitations with respect to overhead reaching, and explaining whether there is a conflict between his testimony and the DOT.

The Court also directs the ALJ, upon remand, to consider the additional evidence which was provided to the Appeals Council after the ALJ's decision, as it relates to Plaintiff's shoulder and upper back pain.

**IV.  Conclusion:**

Having carefully reviewed the record, the undersigned finds there is not substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and therefore, the case

should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 7th day of July, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE